**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Libertarian Party of
New Hampshire, et al.

      v.                                      Civil No. 08-cv-367-JM

William M. Gardner, in his
official capacity as Secretary
of State of New Hampshire


**O R D E R**


Plaintiffs, the Libertarian Party of New Hampshire ("LPNH")
its chairman Brendan Kelly, Libertarian Party supporter Hardy
Macia, and Libertarian candidates for the 2008 presidential
election "Bob" Barr and his running mate, Wayne A. Root, brought
this 42 U.S.C. § 1983 action contending New Hampshire's statutory
scheme for placing names of candidates on the general election
ballot violates their First and Fourteenth Amendment rights.
They initially sought both injunctive and declaratory relief but
now seek only a declaration that the challenged statutes are
unconstitutional restrictions on their rights to freedom of
association, of speech in the form of voting, and to due process
and equal protection.  Before the court are cross motions for

summary judgment.  For the reasons set forth below, defendant's
motion (document no. 12) is granted and plaintiffs' motion
(document no. 19) is denied.

<u>Background</u>

New Hampshire's ballot for the 2008 general election was
divided into a grid of five columns, with the far left column
labeled "Offices" and listing the public offices to be filled,
and then the next four columns designating the candidates
competing to fill the respective positions.  <u>See</u> Def.'s Mot. for
Summ. J. ("Def.'s Mot."), Ex. B (November 4, 2008 General
Election ballot for Nashua, New Hampshire, Ward 1).  The columns
were labeled, in order from left to right across the ballot,
first "Republican Candidates," then "Other Candidates," next
"Democratic Candidates," and lastly "Write-In Candidates."  <u>See</u>
<u>id.</u>  Pursuant to New Hampshire law, the ballot was arranged so
that the names of candidates nominated for the various offices
were in successive party columns, so that each party's candidates
were presented in a separate column.  <u>See</u> New Hampshire Rev.
Stat. Ann. ("RSA") 656:5 (2008).

To secure a distinct "party column" on the ballot, a
political organization must either satisfy the definition of a

"party" under New Hampshire law by having received at least four percent of the votes at the preceding state general election for governor or United States senator, <u>see</u> RSA 652:11 (2008), or it must petition to be placed on the ballot by submitting a sufficient number of signatures in support of its nomination to the ballot. <u>See</u> RSA 655:40-a (2008) (allowing a political organization ballot access if nominating papers are signed by 3% of registered voters from the previous general election).[1]  In 2008, the Libertarian Party was not entitled to its own column on the ballot because it failed to satisfy either the statutory definition for a party or the statutory process for nomination to the ballot. <u>See</u> RSA 652:11 & 655:40-a; <u>see</u> <u>also</u> Def.'s Mot., Ex. A, ¶¶ 4-6.  As a result, in the 2008 presidential election, candidates representing the Libertarian Party appeared on the New Hampshire ballot in the "Other Candidates" column.

In the "Other Candidates" column, several names appeared. Running for the offices of President and Vice President of the United States in that column were three sets of candidates:  (1)

---

[1]A political organization with a column on the ballot then places its nominated candidates in that column. <u>See</u> RSA 655:14, 655:17, 655:43, I, & 656:5 (providing how parties place their nominated candidates on the ballot); RSA 655:40-b, 655:17-c, 655:43, III, & 656:5 (providing how political organizations nominated to the ballot get their candidates' names on it).

Ralph Nader and his running mate, Matt Gonzalez, ran as Independent candidates; (2) George Phillies and his running mate, Christopher Bennett, ran as Libertarian candidates; and (3) plaintiffs Barr and his running mate Root also ran as Libertarian candidates.  These candidates appeared on the New Hampshire ballot pursuant to the statutory provisions for a candidate "who intends to have his name placed on the ballot for the state general election by means other than nomination by party primary."  RSA 655:14-a (2008).[2]  Since the LPNH was not a recognized party under New Hampshire law in 2008, its candidates had to access the ballot by means other than nomination by party. See Def.'s Mot., Ex. A, ¶¶ 5 & 6, and Ex. C, ¶ 3.  In fact, both Phillies and Barr got onto the ballot by filing the requisite number of signatures from New Hampshire supporters.  See RSA 655:40 & 655:42, I (requiring 3,000 registered voters sign nomination papers to nominate a candidate for president); see

_____

[2]New Hampshire law enables anyone to access the ballot even if the person is not nominated by a political organization, provided certain statutory requirements are met.  See RSA 655:14-a; see also RSA 655:40 (2009 Supp.) (allowing a candidate access to the ballot by submitting the requisite number of nomination papers); RSA 655:17-a (2008) (providing for a nonparty or other candidate to declare an intent to run for public office in the general election) & 655:17-b (providing same specifically for the offices of president and vice president).

also Def.'s Mot., Ex. C, ¶¶ 4 & 5.

Yet Barr also was nominated as the Libertarian candidate for president at the Libertarian Party convention on May 22-26, 2008. See Pl.'s Mot. for Summ. J. ("Pl.s Mot."), Ex. 2 (Aff. of Bill Redpath), ¶ 3.  Because the Libertarian Party nominated Barr and Root as its presidential and vice presidential candidates at its convention, plaintiffs believed Barr and Root alone should have appeared on the New Hampshire 2008 general election ballot as the Libertarian Party candidates for president and vice president. Plaintiffs asked defendant New Hampshire Secretary of State William Gardner to remove Phillies and Bennett from the ballot, but he refused to do so.  Plaintiffs brought this action claiming they have a constitutional right to have Barr and Root be the sole nominees on the ballot and to have had the names of Phillies and Bennett, who were defeated at the Libertarian Party convention, removed from the New Hampshire general election ballot.

Discussion

**1.  Mootness**

Defendant argues this action should be dismissed as moot, because plaintiffs no longer seek a preliminary injunction and

there is no evidentiary basis to conclude that Phillies and Barr
will be competing in future presidential elections, obviating the
need for a permanent injunction to remove from the ballot
Phillies/Bennett as Libertarian candidates.  Plaintiffs'
challenge is to New Hampshire's statutory scheme for enabling
candidates for the presidency and vice presidency to get on the
general election ballot and to designate their party affiliation,
even if the political organization does not support those
candidates.  Plaintiffs' challenge to that process, regardless of
who the individual candidates may be, is "capable of repetition
yet evading review" and is not, therefore, moot.  See Storer v.
Brown, 415 U.S. 724, 737 n.8 (1974); Ramirez v. Ramos, 438 F.3d
92, 100 (1st Cir. 2006) (citing authority to explain this
exception to the mootness doctrine).

    **2.  Summary Judgment Standard of Review**

    The parties agree that there are no genuine issues of
material fact, rendering the matter appropriate for summary
disposition.  See Fed. R. Civ. P. 56(c) (allowing for summary
judgment when the record is undisputed); see also Quinn v. City
of Boston, 325 F.3d 18, 28 (1st Cir. 2003).  Summary judgment
provides the means to "pierce the boilerplate of the pleadings"

and "dispos[e] of cases in which no trialworthy issue exists."
Id.  The party moving for summary judgment bears the initial
responsibility of demonstrating the absence of a genuine issue of
material fact, Celotex Corp. v. Catrett, 477 U.S. 317, 323
(1986), with the court construing the evidence and all inferences
reasonably drawn therefrom in the light most favorable to the
nonmovant.  See Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st
Cir. 2001).  Once the moving party has met its burden, the burden
shifts to the nonmovant to "produce evidence on which a
reasonable finder of fact, under the appropriate proof burden,
could base a verdict for it; if that party cannot produce such
evidence, the motion must be granted." Ayala-Gerena v. Bristol
Myers-Squibb Co., 95 F.3d 86, 94 (1st Cir. 1996) (citations
omitted).  Neither conclusory allegations, improbable inferences,
nor unsupported speculation are sufficient to defeat summary
judgment.  See Carroll v. Xerox Corp., 294 F.3d 231, 236-37 (1st
Cir. 2002); see also Price v. Canadian Airlines, 429 F. Supp. 2d
459, 461 (D.N.H. 2006).  On cross motions for summary judgment,
the standard of review is applied to each motion separately.  See
Am. Home Assur. Co. v. AGM Marine Contrs., 467 F.3d 810, 812 (1st
Cir. 2006); see also Mandel v. Boston Phoenix, Inc., 456 F.3d

198, 205 (1st Cir. 2006) ("The presence of cross-motions for summary judgment neither dilutes nor distorts this standard of review.").

### 3.  Test for Constitutionality

Plaintiffs contend New Hampshire's statutory scheme for placing candidates' names and party affiliations on the general election ballot is unconstitutional.  Although several statutes regulate the election process in New Hampshire, plaintiffs have not clearly identified which statutes unconstitutionally preclude them from effectively exercising their claimed "right to substitute" Barr and Root for Phillies and Bennett.  Plaintiffs challenge generally the provisions that enable statutorily recognized parties to control which names appear on the ballot, arguing they should be allowed to control which Libertarian candidates appear on the ballot just like those political organizations which have secured a party column on the ballot do.[3]  Though plaintiffs challenge the provisions that give a "party" different treatment on the ballot than the Libertarian Party received, they concede that the statutory definition of

---

[3]See RSA 652:11 & 655:40-a (providing access to the ballot for political organizations) and RSA 656:5 (allowing recognized parties their own column on the ballot to list their candidates).

"party" is constitutional and that they were not a statutorily recognized party in 2008.  See Pl.'s Reply to Def.'s Mot. (document no. 24) ("Pl.'s Reply") at 2.[4]

Despite this concession, plaintiffs argue the Libertarian Party has a "right to substitute candidacies in appropriate situations and to control use of the 'Libertarian' designation by candidates for public office in situations where the party nominates or otherwise endorses candidates."  Id.  Plaintiffs assert that defendant's refusal to let them modify the ballot as they wanted impeded their right to vote effectively and "to associate for the advancement of political ideas" for no legitimate reason, and rendered the ballot, with its candidates' names and party affiliations, unconstitutional.

Though plaintiffs contend that the severe burdens on their

---

[4]Had they not made this concession, plaintiffs would have been collaterally estopped from litigating the constitutionality of the definition here, because that issue and New Hampshire's ballot access statutory scheme have already been found to be constitutional.  See Libertarian Party N.H. v. State, 154 N.H. 376, 383-86, 910 A.2d 1276, 1282-84 (2006); see also Werme v. Merrill, 84 F.3d 479, 484 (1st Cir. 1996) (finding definition of party constitutional in the context of selecting ballot clerks because it depends on the neutral criterion of success at the polls); Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 66 (1st Cir. 2008) (discussing preclusive effect of state court judgments); In re Zachary G., 159 N.H. 146, 151, 982 A.2d 367, 371-72 (2009) (explaining collateral estoppel under New Hampshire law).

First and Fourteenth Amendment rights require strict scrutiny of New Hampshire's ballot access provisions, the level of scrutiny in ballot access cases depends on "the degree to which the challenged restrictions operate as a mechanism to exclude certain classes of candidates from the electoral process." Anderson v. Celebrezze, 460 U.S. 780, 793 (1983). The test for whether or not election regulations are constitutional depends on a variety of factors which the Supreme Court has described as a "flexible framework." See Werme, 84 F.3d at 483 (citing Burdick v. Takushi, 504 U.S. 428, 432-34 (1992) and Anderson, 460 U.S. at 789). That framework balances the state's constitutional duty to execute fair elections, see U.S. Const. Art. I, § 4, cl. 1, with individuals' First Amendment rights to associate and vote in a politically effective manner. See Werme, 84 F.3d at 483 (citing authority).

The test for constitutionality measures the burden imposed by the challenged regulation against the state's asserted need for that regulation, as follows:

> The level of scrutiny to be applied corresponds roughly to the degree to which a challenged regulation encumbers First and Fourteenth Amendment rights. Consequently, a court weighing a challenge to a state election law must start by assessing "the character and magnitude of the asserted injury"

> to the plaintiff's constitutionally protected
> rights and then "evaluate the precise interests
> put forward by the State as justifications for
> the burden imposed by the rule."

Id. (quoting Anderson, 460 U.S. at 789).  If plaintiffs' rights are severely restricted, then the regulation must be narrowly drawn to advance a compelling state interest, but if the rights are only reasonably restricted in a nondiscriminatory manner, then the state's important regulatory interests are enough for the regulation to pass constitutional muster.  See id. (citing Burdick, 504 U.S. at 434); see also McClure v. Galvin, 386 F.3d 36, 41 (1st Cir. 2004) (applying the "sliding scale approach" to assess a state's election law).

**4.  Analysis**

a.  Plaintiffs' Asserted Injuries

Plaintiffs claim that by denying them "exclusive access to the ballot" defendant has diluted their voting strength, impaired their freedom of political speech and association, and denied them equal protection of the law because the major parties' rights are not similarly restricted.  See Pl.'s Mot. at 9.  As set forth below, I do not find the challenged regulations to severely burden either plaintiffs' First or Fourteenth Amendment rights.

### (i) Right to Substitute

As an initial matter, plaintiffs' alleged "right to substitute" is really a euphemism for a purported "right to remove" the names of candidates from the ballot who were legally entitled to be on the ballot.  There is no constitutional right to substitute one candidate's name for another.  To the contrary, under New Hampshire law, individuals have an explicit constitutional right to run for public office.  <u>See</u> N.H. Const. Part I, Art. 11 (providing that "[e]very inhabitant in the state, having the proper qualifications, has an equal right to be elected into office.").  Based on this provision, it would have been unconstitutional for defendant to have removed Phillies and Bennett from the general election ballot because they were qualified to be there and had cleared the statutory hurdles to get there.  <u>See</u> <u>id.</u>; <u>see</u> <u>also</u> RSA 655:40 & 655:42, I.  Barr and Root accessed the ballot the same way that Phillies and Bennett did, and there is no basis under New Hampshire law to justify removing Phillies and Bennett while keeping Barr and Root.

Plaintiffs argue that most states recognize a right to substitute presidential and vice presidential candidates under appropriate circumstances, so New Hampshire should conform to

12

this general rule.  <u>See</u> Pl.'s Mot. at 11-12.  New Hampshire law

in fact does allow for substitution of candidates in appropriate

circumstances.  <u>See</u> RSA 655:37-39 (providing party the right to

fill in names on a ticket in the event of a vacancy following a

primary, or the disqualification or death of a candidate).  None

of those circumstances applied in 2008 to justify substituting

Root/Barr in place of Phillies/Bennett.

The cases plaintiffs cite in support of their claim that the

right to substitute names has been upheld by many jurisdictions

are neither controlling nor apposite to the instant matter.  <u>See</u>

Pl.'s Mot. at 11-12.[5]  In these cases, the candidates who sought

to be removed from the ballot were voluntarily ceding their

_____

[5]<u>See</u> <u>e.g.</u> <u>Barr v. Galvin</u>, 584 F. Supp. 2d 316 (D. Mass.
2008), and <u>id.</u>, __ F. Supp. 2d __, No. 08-11340-NMG, 2009 WL
3062317 (D. Mass. Sept. 17, 2009) (enjoining enforcement of
substitution statute found to be void for vagueness because it
did not clearly provide for presidential nominees); <u>Anderson v.</u>
<u>Firestone</u>, 499 F. Supp. 1027 (N.D. Fla. 1980) (requiring
independent candidates to name running mate months before major
party candidates do is discriminatory, so unconstitutional to
prevent surrogate running mate from voluntarily substituting his
name for chosen running mate's name); <u>In re: the Substitution of</u>
<u>Bob Barr</u>, 956 A.2d 1083 (Commw. Ct. Pa. 2008), <u>aff'd</u> 598 Pa. 558,
958 A.2d 1045 (2008) (allowing substitution where nominee
voluntarily withdraws); <u>cf.</u> <u>El-Amin v. State Bd. of Elections</u>,
721 F. Supp. 770 (E.D. Va. 1989) (finding unconstitutional
statutory scheme that gave major party candidates but not
independent candidates a second chance to qualify for placement
on the ballot).

position.  Nothing in the record supports the inference that
Phillies and Bennett wanted to be taken off the general election
ballot, yet defendant would not remove them.  I decline to
express an opinion or supposition about the legal consequences of
such a possible exchange since those facts are not before me.

    To find that plaintiffs have a right to remove Phillies and
Bennett from the ballot requires a finding that the New Hampshire
statutes that enable "other candidates" to access the ballot are
unconstitutional.  The crux of plaintiffs' complaint is that they
wanted Root and Barr to be the only Libertarian candidates listed
on New Hampshire's 2008 ballot because they were nominated at the
Libertarian Party's convention.  Plaintiffs repeatedly state what
they want, but fail to justify the relief sought by demonstrating
how the statutory scheme that got both Phillies/Bennett and
Root/Barr on the ballot as Libertarian Party candidates is
unconstitutional.  Though plaintiffs speak in sweeping terms that
this denial of their "right to substitute" deprives them of equal
protection of the law and deprives them of the First Amendment
rights to vote effectively and associate for the advancement of
political ideas, see Pl.'s Mot. at 9, they have failed to connect
the dots to show how New Hampshire's general election ballot is

14

unconstitutional.

### (ii) Right to Vote

Nothing in the ballot format violates plaintiffs' right to cast an effective or meaningful vote.  Though the right to vote is fundamental to our system of democracy, it is well-settled that the right to vote in any manner is not absolute.  See Burdick, 504 U.S. at 433 (citing Ill. Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 184 (1979) and Munro v. Socialist Workers Party, 479 U.S. 189, 193 (1986)).  Ironically, rather than creating a barrier that precluded plaintiffs' choice and thereby blunted their right to cast a meaningful vote, see id. (discussing when regulatory barriers may be constitutional), New Hampshire's 2008 general election ballot expanded the choice of candidates beyond what plaintiffs wanted.  Plaintiffs present no evidence that they were unable to vote for the candidate of their choice.  They also fail to support their claim of voter confusion with any evidence that even suggests voters mistakenly cast their vote for Phillies/Bennett when they intended to vote for Root/Barr.  The ballot clearly designated the choices, enabling voters to cast their votes for the Libertarian candidate they preferred, much like what happens in a primary election.

15

Further, I do not see how New Hampshire's general election ballot scheme for "other candidates" hinders the cumulative voting strength of either the Libertarian Party or any other minor party.  The system appears to potentially strengthen the voting power of minor parties and their supporters.  As occurred in 2008, the choice of Root/Barr and Phillies/Bennet presumably prompted supporters of each set of candidates to vote, yet it is the aggregate number of votes for the Libertarian Party, not the individual candidates, that determines whether the 4% threshold has been crossed to be a recognized party in the next election.  See RSA 652:11.  Based on the record before me, I find that plaintiffs have failed to demonstrate how New Hampshire's ballot or its ballot access statutory scheme have burdened their First Amendment right to vote.

### (iii) Right to Political Association

Plaintiffs next assert that their freedom of association rights entitle them to control the use of their party name.  They argue this control is necessary to prevent voter confusion about who the party endorses and to prevent dilution of their political power, which allegedly occurred when both Phillies/Bennett and Barr/Root were listed on New Hampshire's ballot as Libertarian

candidates.  They take particular issue with the fact that listing both sets of candidates did not convey that the Libertarian Party had nominated Root and Barr as its candidates for president and vice president, rather than Phillies and Bennett.  Plaintiffs now contend that the ballot's "Other Candidate" column, which allows any candidate to designate his or her party affiliation regardless of whether the party endorses the candidate, infringes on the freedom of political association.

Plaintiffs are correct that the Libertarian Party has a First Amendment right to determine who best represents the party and to elect that standard bearer as the party's nominee for president and vice president.  See Timmons v. Twin Cities Area New Party, 520 U.S. 351, 357 (1997) (explaining how the First Amendment protects political freedom); see also id. at 371 (Stevens, J. dissenting) (stating that recognized political parties "unquestionably have a constitutional right" to select their nominees and to communicate that choice to the voting public); Colo. Republican Fed. Campaign Comm'n v. FEC, 518 U.S. 604, 616 (1996) ("The independent expression of a political party's views is 'core' First Amendment activity. . ..").  The right to nominate candidates, however, does not translate into a

right to control whose name appears, or how the name appears, on
an election ballot.  Further, the right to nominate is not a
right to exclude other candidates, who legitimately get onto the
ballot by representing voters who happen to be affiliated with a
party that may have nominated another candidate.  It is the
state, or defendant here, not plaintiffs, that has the right to
regulate the ballot to ensure fair elections.  See Timmons, 520
U.S. at 357 (citing authority).

Plaintiffs' complaint is really that the ballot prevents
them from communicating a campaign message, which in 2008 was
that Root and Barr, not Phillies and Bennett, were the better
leaders for the Libertarian movement.  But the ballot is not the
party's platform to advertise its political position.  See
Burdick, 504 U.S. at 438 (upholding Hawaii's ban on write-in
ballots because "the election process is . . . not to provide a
means of giving vent to short-range political goals, pique, or
personal quarrels.  Attributing to elections a more generalized
expressive function would undermine the ability of States to
operate elections fairly and efficiently" (internal quotation
omitted)).  As the Supreme Court has explained:

> We are unpersuaded, however, by the party's
> contention that it has a right to use the ballot

18

> itself to send a particularized message, to its
> candidates and to the voters, about the nature of
> its support for the candidate.  Ballots serve
> primarily to elect candidates, not as forums for
> political expression.

<u>Timmons</u>, 520 U.S. at 362-63.  The fact that New Hampshire's ballot hindered plaintiffs' ability to send the message of who the Libertarian Party's nominees were in 2008 does not mean it severely burdened their associational rights as plaintiffs claim, because the ballot is not a platform for campaigning.  <u>See id.</u> at 363 (upholding Minnesota's fusion ban even though it prevented plaintiffs' from selecting as their nominee a candidate already representing another party).

New Hampshire's ballot "does not restrict the ability of the [Libertarian] Party and its members to endorse, support, or vote for anyone they like."  <u>Id.</u>  Nothing in New Hampshire's election code infringed upon the Libertarian Party's right to elect Root and Barr as its 2008 presidential candidates.  And nothing in New Hampshire's election code denied them access to the ballot; they were on the 2008 general election ballot.  Had the Libertarian Party satisfied the statutory requirements to acquire its own column on the New Hampshire ballot in 2008, New Hampshire's election laws would have enabled them to designate Root and Barr

19

in that column as their sole nominees.

Plaintiffs, however, were not on the ballot as a recognized party entitled to its own column.  Instead they, like Phillies and Bennett, appeared as "Other Candidates," chosen by the supporters who selected them as the best representatives of those voters.  In such circumstances, the rights of the voters to associate for political purposes were protected and advanced by New Hampshire's ballot and its equal recognition of both the Phillies/Bennett and the Root/Barr tickets.  See Burdick, 504 U.S. at 44 n.10 ("It seems to us that limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is eminently reasonable.").  Plaintiffs' associational rights are not greater than the associational rights of Phillies and Bennett or their supporters, whose numbers were substantial enough to hoist those candidates onto the ballot as well.  Plaintiffs have not demonstrated any constitutional or statutory basis to justify removing Phillies and Bennett from the ballot while keeping themselves on it.

Plaintiffs' First Amendment right to freedom of political association does not give rise to a corresponding right to remove

20

other candidates from the ballot who had sufficient electoral support to be nominated to it.  In 2008, plaintiffs exercised their right to select their "standard bearer" and succeeded in getting their nominee on New Hampshire's ballot.  Cf. Timmons, 520 U.S. at 359 (explaining how the right to chose a nominee is not an absolute right to have that choice appear on the ballot). I find that the challenged ballot, with its "Other Candidates" column, imposes only a very minimal burden on plaintiffs' right to associate politically.  See Burdick, 504 U.S. at 438 (upholding Hawaii's ban on write-in votes because its election laws provided adequate access to the ballot).

### (iv) Right to Equal Protection

Finally, plaintiffs contend that New Hampshire's ballot, with its two sets of Libertarian Party candidates in the "Other" column, discriminated against them by interfering with their right to control whose names were affiliated with their party, while parties with their own column on the ballot can control which candidates appear as their nominees.  Plaintiffs' argument appears to be that since the major parties are allowed to designate their candidates for the respective public offices on the ballot, they also should be allowed to do so.  The fallacy of

21

plaintiffs' argument is twofold.

First, as plaintiffs concede, they were not a recognized party under New Hampshire law in 2008 and therefore, as discussed supra, they were not entitled to avail themselves of the statutory provisions that enable parties to designate their nominees in their own column.  Nothing in New Hampshire's ballot access statutory scheme distinguishes between major and minor parties in a way that unconstitutionally burdens the rights of minor parties.  See Libertarian Party NH, 154 N.H. at 382-83, 910 A.2d at 1281-82 (holding ballot access statutes RSA 652:11, 655:40, and 655:40-a constitutional).  Plaintiffs do not challenge any of these statutes and, in fact, availed themselves of these provisions to get their names onto the 2008 general election ballot.  See RSA 655:40.  Minor parties like the Libertarian Party certainly can have a party column and control the names of candidates in it by garnering sufficient electoral support from registered voters.  See RSA 652:11 & 655:40-a.

Simply because plaintiffs did not take advantage of either provision to obtain their own column on the ballot does not mean that the statutes discriminate against them or other minor parties.  Like the Republican and Democratic parties, they have

the opportunity to meet, and in the past have met, the statutory
requirements to obtain their own column on the general election
ballot.  See RSA 652:11 & 655-40-a; see also Def.'s Mot, Exs. A &
C (stating Libertarian Party's history of being on the New
Hampshire ballot).  "Equality of opportunity exists, and equality
of opportunity – not equality of outcomes – is the linchpin of
what the Constitution requires in this type of situation."
Werme, 84 F.3d at 485.

     Second, the "Other Candidate" provision, RSA 655:40, which
Root and Barr used to get onto the ballot, does not differentiate
between party affiliations and requires all "other candidates" to
file nomination papers at the same time and in the same manner as
the major party candidates.  See RSA 655:14-a (requiring other
candidates to file declarations of intent during the same time
period in which party candidates must file) & 655:43 (providing
filing deadlines).  My reading of RSA 655:40 indicates that
plaintiffs construe its provisions too narrowly.  Nothing in the
plain language of the statute would prevent a disgruntled member
of the Democratic or Republican party from acquiring the
requisite voter support and getting on the ballot as an "other
candidate" pursuant to the provisions of RSA 655:40, like both

Barr and Phillies did here.[6]  In that event, the major parties
are susceptible to the exact, same alleged potential voter
confusion and vote dilution as plaintiffs claim they suffer.  The
statutory scheme applies equally to all parties and all potential
candidates, including the requirement that all candidates declare
their party affiliations.  See RSA 656:4 (providing that every
state general election ballot shall contain the names of the
candidates and their party appellations).  There is no
distinction between major and minor parties in the "Other
Candidates" column to support the conclusion that the ballot
violates plaintiffs' equal protection rights.

     Plaintiffs have not identified any basis for them, unlike
any other party, to trump New Hampshire's nondiscriminatory
ballot access scheme and control what the general election ballot
looks like.  The statutory scheme does not unfairly discriminate
against minor parties simply because they, like plaintiffs, may
not have their own column and must then appear in the "other
candidates" column on the general election ballot.

---

     [6]The statutes do prevent someone who ran unsuccessfully in
the primary from then filing nomination papers as an other
candidate.  See RSA 655:43, IV (precluding someone who ran as a
candidate in the primary from also running in the general
election by submitting nomination papers) & 655:47 (declaration
of candidacy for primary).

b.  State's Interests

As the foregoing analysis demonstrates, New Hampshire's ballot and the statutory scheme supporting it do not violate plaintiffs' rights to vote or to equal protection and only very minimally burden their right to political association.  "Because . . . the burden is slight, the State need not establish a compelling interest to tip the constitutional scales in its direction."  Burdick, 504 U.S. at 438.  Accordingly, New Hampshire's election regulations will be upheld as long as they reasonably advance important state interests.  See id. at 434 ("when a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." (internal quotation omitted)); see also McClure, 386 F.3d at 45 (declining to speculate "as to all of the other conceivable ways in which the state could have set up its framework").

To justify New Hampshire's election regulations, defendant has identified the state's interest in administering its elections, including controlling the number of candidates and parties on the ballot, and maintaining stability in the

25

democratic process.  Both of these interests have long been
recognized as reasonable justifications for regulating the
"Times, Places and Manner of holding Elections," U.S. Const.,
Art. I, § 4, cl. 1, even though the regulations may infringe on
First Amendment rights.  See Timmons, 520 U.S. at 364  ("States
certainly have an interest in protecting the integrity, fairness,
and efficiency of their ballots and election processes as means
for electing public officials."); see also Tashjian v. Republican
Party, 479 U.S. 208, 217 (1986) (explaining state's broad power
over elections).

     Plaintiffs primarily challenge the state's refusal to give
them their own column on the ballot, and the corresponding
control over their party name, like the major parties have.  A
state's interest in maintaining the stability of its political
system, however, can justify imposing regulations that, while not
banning competition from minor or third party candidates, may
erect hurdles that they must clear before gaining access to the
ballot.  See id. at 367 (discussing how broad-based political
stability is a legitimate state interest that can justify
regulations that favor a two-party system).  New Hampshire's
requirements for a distinct party column on the ballot erect such

26

a hurdle.  These type of regulations, that require candidates or the parties they represent to have a sufficient level of support before allowing them onto the ballot, are fair and reasonable limits on First Amendment freedoms, "because it is both wasteful and confusing to encumber the ballot with the names of frivolous candidates."  <u>Anderson</u>, 460 U.S. at 788-89 n.9; <u>see also</u> <u>Am. Party of Tex. v. White</u>, 415 U.S. 767, 789 (1974) (legitimate to require a party to show "a significant modicum of support" before getting on the ballot).  New Hampshire's statutory scheme, that placed plaintiffs in the "Other Candidates" column because they had not consolidated the electoral support needed to get their own column, advances the state's interest in maintaining political stability by ensuring the ballot properly reflects the voting public.

Plaintiffs' related challenge is to the state's refusal to remove Phillies and Bennett from the ballot.  Plaintiffs take considerable issue with New Hampshire's law that enables competing candidates to each appear on the ballot as representing a single party when that party has only endorsed one of the candidates.  Without repeating the lengthy analysis of New Hampshire's "Other Candidate" column set forth above, suffice

here to say that there was nothing unconstitutionally burdensome about having both the Barr/Root and the Phillies/Bennett tickets on the 2008 ballot.  Whatever minimal burden the ballot's dual presentation of these candidacies may have had on plaintiffs' associational rights was offset by the state's valid and important interest in protecting equally the rights of plaintiffs and of the Phillies/Bennett supporters to associate politically and to have equal access to the ballot.[7]  The state's interest in administering elections fairly is advanced by this election code, which provides equal access to New Hampshire's ballot.

Finally, plaintiffs argue unpersuasively that the State's decision to keep Phillies and Bennett on the ballot resulted in the "unauthorized use" of their party name.  As discussed above, Phillies and Bennett had as much right as Root and Barr to appear on New Hampshire's 2008 ballot as Libertarian candidates because they got onto the ballot as "Other Candidates" by representing

---

[7]Although not explicitly identified by defendant, states also have a legitimate interest in ensuring that intra-party competition is resolved in a democratic fashion.  See Cal. Democratic Party v. Jones, 530 U.S. 567, 572 (2000) (discussing state's right to regulate primaries).  While such competition is usually resolved before the general election, when it is not, as occurred in 2008 with the Libertarian Party, New Hampshire's general election ballot fairly and democratically provides the mechanism for voters to choose their preferred candidate in a manner much like that employed in a primary election.

28

voters who were affiliated with the Libertarian Party.  New Hampshire's requirement that all candidates declare their party affiliation furthers the state's interest in administering fair elections as well, because "[t]o the extent that party labels provide a shorthand designation of the views of party candidates on matters of public concern, the identification of candidates with particular parties plays a role in the process by which voters inform themselves for the exercise of the franchise." Timmons, 520 U.S. at 375 (Stevens, J., dissenting (internal quotation omitted).

The function of elections is to elect candidates, and the Supreme Court has "repeatedly upheld reasonable, politically neutral regulations that have the effect of channeling expressive activity at the polls." Burdick, 504 U.S. at 438.  New Hampshire's general election ballot and its ballot access statutory scheme are politically neutral regulations that advance its interests in administering fair, honest and efficient elections and maintaining political stability.  The state's interests advanced by its ballot access statutory framework outweigh the very minimal infringement on plaintiffs' political associational rights.

<u>Conclusion</u>

I find, based on the undisputed record before me, that neither plaintiffs' First nor Fourteenth Amendment rights were violated by defendant's refusing to remove Phillies and Bennett and to list Barr and Root as the sole Libertarian Party candidates on the 2008 general election ballot.  The statutory scheme that effected that result is constitutional.  Accordingly, plaintiffs' motion for summary judgment (document no. 19) is denied, and defendant's motion for summary judgment (document no. 12) is granted.

**SO ORDERED.**


_____
James R. Muirhead
United States Magistrate Judge


Date:   February 17, 2010

cc:     Evan Feit Nappen, Esq.
        Gary Sinawski, Esq.
        Nancy J. Smith, Esq.